## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | |
|---|---|
| **MEGAN ENGER, SARAH INFANTE, and RAMON LOPEZ,** Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **THOMAS L. CARDELLA & ASSOCIATES, INC.** <br><br> Defendant. | Case No. 1:20-cv-00078-CJW-KEM <br><br> JURY TRIAL DEMANDED <br><br> COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(B) <br><br> CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |

## FIRST AMENDED COLLECTIVE / CLASS ACTION COMPLAINT

Plaintiffs Megan Enger ("Enger"), Sarah Infante ("Infante"), and Ramon Lopez ("Lopez") bring this action individually and on behalf of all others similarly situated (hereinafter "Plaintiffs and the Putative Class Members") who worked for Thomas L. Cardella & Associates, Inc. (hereinafter "Defendant" or "TLC"), at any time during the relevant statutes of limitation through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 206, 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. §§ 201–19, Iowa and Texas common law, and the New Mexico Minimum Wage Act ("NMMWA"), §§ 50-4-19–30.

Plaintiffs' FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while their respective Iowa, Texas and New Mexico state law claims are asserted as class actions under Federal Rule of Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

# I.
# OVERVIEW

1.      This is a collective action to recover overtime wages and liquidated damages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 and class actions pursuant to the laws of Iowa, Texas and New Mexico pursuant to Fed. R. Civ. P. 23, to recover unpaid straight-time wages and other applicable penalties.

2.      Plaintiffs and the Putative Class Members are those similarly situated persons who worked for TLC either in call centers or from home, at any time during the relevant statutes of limitation through the final disposition of this matter, and have not been paid for all hours worked nor the proper amount of overtime in violation of state and federal law.

3.      Specifically, TLC has enforced a uniform company-wide policy wherein it improperly required its hourly call-center employees[1]—Plaintiffs and the Putative Class Members—to perform work "off-the-clock" and without pay.

4.      TLC's illegal company-wide policy has caused Plaintiffs and the Putative Class Members to have hours worked that were not compensated and further created a miscalculation of their regular rate(s) of pay for purposes of calculating their overtime compensation each workweek.

5.      Although Plaintiffs and the Putative Class Members routinely worked in excess of forty (40) hours per workweek, Plaintiffs and the Putative Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

---

[1] Call-center employees means all hourly, non-exempt employees who performed their work for TLC through a computer, handling customer phone calls, emails, and/or chat support, or who performed data entry for customers at a TLC call center or from home.

6.     TLC knowingly and deliberately failed to compensate Plaintiffs and the Putative Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis during the relevant time period.

7.     Plaintiffs and the Putative Class Members did not (and currently do not) perform work that meets the definition of exempt work under the FLSA or relevant state law.

8.     Plaintiffs and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight-time and other damages owed under their respective Iowa, Texas and New Mexico state law claims as Rule 23 class actions.

9.     Plaintiffs pray that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10.     Plaintiffs also prays that the respective Rule 23 classes are certified as defined herein, and that Plaintiff Enger be named as the Class Representative of the Iowa Common-Law Class, Plaintiff Infante be named as the Class Representative of the Texas Common-Law Class, and Plaintiff Ramon be named as the Class Representative of the New Mexico Class.

## II.
## THE PARTIES

11.     Plaintiff Megan Enger ("Enger") was employed by TLC in Keokuk, Iowa during the relevant time period. Plaintiff Enger did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

---

[2] The written consent of Megan Enger is on file with this Court at ECF No. 1-2.

12. Plaintiff Sarah Infante ("Infante") was employed by TLC in El Paso, Texas during the relevant time period. Plaintiff Infante did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[3]

13. Plaintiff Ramon Lopez ("Lopez") was employed by TLC in Alamogordo, New Mexico during the relevant time period. Plaintiff Lopez did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[4]

14. The FLSA Collective Members are those current and former hourly call-center employees who were employed by TLC, anywhere in the United States, at any time from August 12, 2017 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiffs worked and were paid.

15. The Iowa Common Law Class Members are those current and former hourly call-center employees who were employed by TLC, in Iowa, at any time from August 12, 2018 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Enger worked and was paid.

16. The Texas Common Law Class Members are those current and former hourly call-center employees who were employed by TLC, in Texas, at any time from August 12, 2016 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Infante worked and was paid.

17. The New Mexico Class Members are those current and former hourly call-center employees who were employed by TLC, in New Mexico, at any time from August 12, 2017 through

---

[3] The written consent of Sarah Infante is on file with this Court at ECF No. 1-3.

[4] The written consent of Ramon Lopez is hereby attached as Exhibit "A."

the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Lopez worked and was paid.

18.    Defendant Thomas L. Cardella & Associates, Inc.("TLC") has been served and appeared herein.

## III.
## JURISDICTION & VENUE

19.    This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

20.    This Court has supplemental jurisdiction over the additional Iowa, Texas and New Mexico state law claims pursuant to 28 U.S.C. § 1367.

21.    This Court has personal jurisdiction over TLC because the cause of action arose within this District as a result of TLC's conduct within this District and Division.

22.    Venue is proper in the Northern District of Iowa because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

23.    Specifically, TLC's corporate headquarters are located in Cedar Rapids, Iowa, which is located in this District and Division.

24.    Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

## IV.
## ADDITIONAL FACTS

25.    TLC is a global customer engagement and contact center with fifteen contact centers, that provides customer services, technical support services, and sales and marketing support to its business clients.[5]

---

[5] https://tlcassociates.com/the-tlc-story/our-locations/.

26.     To assist its clients, TLC employs thousands of hourly call-center employees—Plaintiffs and the Putative Class Members—who assist TLC's customers and clients.

27.     Plaintiffs and Putative Class Members worked for (and continue to work for) TLC in call centers owned and operated by TLC throughout the United States.

28.     Plaintiffs and the Putative Class Members' job duties consisted of answering phone calls made by TLC's customers, answering customer/client inquiries, fulfilling orders, accepting payments, selling business products, and generally assisting customers/clients.

29.     Plaintiff Enger was employed by TLC in customer service in Keokuk, Iowa from approximately February 2017 until June 2019.

30.     Plaintiff Infante was employed by TLC in customer service in El Paso, Texas from approximately September 2019 until June 2020.

31.     Plaintiff Lopez was employed by TLC in customer service in Alamogordo, New Mexico from approximately October 2018 until April 2020.

32.     Plaintiffs and the Putative Class Members are non-exempt call-center employees who were (and are) paid by the hour.

33.     Plaintiffs and the Putative Class Members typically worked approximately forty (40) "on-the-clock" hours per week.

34.     In addition to their forty (40) "on-the-clock" hours, Plaintiffs and the Putative Class Members worked up to four (4) hours "off-the-clock" per week and have not been compensated for that time.

### *Unpaid Start-Up Time*

35.     Plaintiffs and the Putative Class Members have not been compensated for all the hours they worked for TLC as a result of TLC's corporate policy and practice of requiring their hourly call-center employees to clock-in only when ready to take their first call.

36. Specifically, Plaintiffs and the Putative Class Members are required to start and log-in to their computer, read company emails/alerts, open multiple different computer programs, log in to each program, and ensure that each program is running correctly—all of which can take up to twenty minutes—before they are allowed to clock in on the time keeping software application and then take their first phone call.

37. If Plaintiffs and the Putative Class Members are not ready and on the phone at shift start, they can be (and often are) subject to discipline.

38. If Plaintiffs and the Putative Class Members clock in prior to their shift start time, they are also subject to discipline.

39. Therefore, the only way a Putative Class Member can be ready on time, and avoid discipline, is to prepare the computer "off-the-clock" and without pay.

40. Additionally, TLC uses a time rounding system, wherein even if Plaintiffs and the Putative Class Members did clock in early, before their shift start time, their time would be rounded downward.

41. Therefore, even if Plaintiffs and the Putative Class Members clocked in early, attempting to both be paid for the startup time and be ready by shift start, as required under TLC policy, the time rounding system would erase their early clock in, and Plaintiffs and the Putative Class Members would not be paid for that time.

42. During this start up time, Plaintiffs and the Putative Class Members were not compensated although they were expected to have completed this process in advance of their official start times.

### *Unpaid Work During Meal Period Breaks*

43. TLC provides Plaintiffs and the Putative Class Members with one unpaid thirty-minute meal break each day.

44. However, TLC requires Plaintiffs and the Putative Class Members to perform "off-the-clock" work during their unpaid meal breaks.

45. Plaintiffs and the Putative Class were required to stay on the clock and on call until the minute their lunch break began, they then must clock out, then perform a lengthy shut down process, then log out of the phone system or otherwise go into an "aux mode" and then log off of their computer prior to leaving their desk for their meal break.

46. Plaintiffs and the Putative Class Members were required to log back into their computer, perform a restart process, log back into the phone system, then clock in, and be back on the phone before their meal break ended.

47. The log off process used prior to taking a meal break took (and continues to take) anywhere from one to three minutes each day.

48. The log in process used after returning from a meal break took (and continues to take) take anywhere from another one to three minutes each day.

49. This lengthy log off and log in procedure had to be performed during Plaintiffs and the Putative Class Members' meal break pursuant to TLC's policy.

### *Unpaid Technical Downtime*

50. Further, Plaintiffs and the Putative Class Members' computers crashed multiple times each week and required Plaintiffs and the Putative Class Members to reset them, which took ten (10) minutes or more each time.

51. Plaintiffs and the Putative Class Members were not compensated for the time they worked for TLC rebooting TLC's computers after they crashed or experienced other technical difficulties.

## *Unpaid Rest Breaks Lasting Twenty Minutes or Less*

52.     In addition, TLC also enforced a uniform company-wide policy wherein it improperly required Plaintiffs and the Putative Class Members to clock out for rest breaks lasting twenty minutes or less. 29 C.F.R. § 785.18; *see also Sec'y U.S. Dep't of Labor v. Am. Future Sys., Inc.*, 873 F.3d 420, 425 (3d Cir. 2017).

53.     TLC permitted Plaintiffs and the Putative Class Members to take two fifteen-minute breaks each day but required them to clock out for any and all breaks taken outside of the two fifteen-minute breaks.

54.     Additionally, if Plaintiffs or the Putative Class Members exceeded their fifteen-minute breaks, supervisors would clock them out.

## *Unpaid Post-Shift Calls*

55.     Plaintiffs and the Putative Class Members were (and still are) not permitted to hang up on customers and must finish every call regardless of how long each call takes.

56.     Plaintiffs and the Putative Class Members frequently found (and continue to find) themselves handling calls past the end of their shift time on the last day of the week.

57.     These calls would cause Plaintiffs and the Putative Class Members to go over their regularly scheduled forty (40) hour work shift each week.

58.     However, due to TLC's illegal time rounding policy, the time spent by Plaintiffs and the Putative Class Members handling calls after their shift has ended is automatically deleted by the timeclock.

59.     Therefore, TLC does not pay Plaintiffs and the Putative Class Members for their post-shift calls.

60.     As a result of TLC's corporate policy and practice of requiring Plaintiffs and the Putative Class Members to perform their computer start up tasks before the beginning of their shifts,

perform log-in log out processes during their unpaid lunch breaks, requiring Plaintiffs and the Putative

Class Members to clock out for short breaks, and TLC's illegal time rounding policy that shaves off

any post-shift call time, Plaintiffs and the Putative Class Members were not compensated for all hours

worked, including all worked in excess of forty (40) in a workweek at the rates required by the FLSA.

61.     TLC has employed other individuals who perform(ed) the same or similar job duties

under the same pay provisions as Plaintiffs.

62.     TLC is aware of its obligation to pay overtime for all hours worked and the proper

amount of overtime for all hours worked in excess of forty (40) each week, but has failed to do so.

63.     Because TLC did not pay Plaintiff and the Putative Class Members time and a half for

all hours worked in excess of forty (40) in a workweek, TLC's pay policies and practices willfully violate

the FLSA.

64.     Because TLC did not pay Plaintiffs and the Putative Class Members for all straight-

time hours worked, TLC's pay policies and practices also violate the state laws of Iowa, Texas and

New Mexico.

**V.**
**CAUSES OF ACTION**

**COUNT ONE**
**(Collective Action Alleging FLSA Violations)**

65.     Paragraphs 1–64 are fully incorporated herein.

**A.      FLSA COVERAGE**

66.     The FLSA Collective is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED
BY THOMAS L. CARDELLA & ASSOCIATES, INC., ANYWHERE IN THE
UNITED STATES, AT ANY TIME FROM AUGUST 12, 2017 THROUGH
THE FINAL DISPOSITION OF THIS MATTER. ("FLSA Collective" or
"FLSA Collective Members").**

67.     At all times hereinafter mentioned, TLC has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

68.     At all times hereinafter mentioned, TLC has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

69.     At all times hereinafter mentioned, TLC has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had two or more employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

70.     TLC employed (and continues to employ) at least two or more workers—Plaintiffs and the Putative Class Members—to provide goods and services through interstate commerce for the purposes of the FLSA.

71.     In performing the operations hereinabove described, Plaintiffs and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

72.     Specifically, Plaintiffs and the FLSA Collective Members are (or were) non-exempt hourly call-center employees of TLC who assisted TLC's customers who live throughout the United States. 29 U.S.C. § 203(j).

73.    At all times hereinafter mentioned, Plaintiffs and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

74.    In violating the FLSA, TLC acted willfully and without a good faith basis and with reckless disregard of applicable federal law.

75.    The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 66.

76.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of TLC.

**B.    FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA**

77.    TLC violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) per workweek at rates at least one and one-half times the regular rates.

78.    Plaintiffs and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of TLC's acts or omissions as described herein; though TLC is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

79.    Moreover, TLC knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees for all hours worked and the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

80.    TLC knew or should have known its pay practices were in violation of the FLSA.

81. TLC is a sophisticated party and employer, and therefore knew (or should have known) its policies were in violation of the FLSA.

82. Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) unsophisticated employees who trusted TLC to pay them in accordance with the law.

83. The decision and practice by TLC to not pay for all hours worked or the proper amount of overtime for all hours worked over forty (40) was neither reasonable nor in good faith.

84. Accordingly, Plaintiffs and the FLSA Collective Members are entitled to be paid for all hours worked and overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C. FLSA COLLECTIVE ACTION ALLEGATIONS

85. All previous paragraphs are incorporated as though fully set forth herein.

86. Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all of TLC employees who have been similarly situated to Plaintiffs with regard to the work they performed and the manner in which they have not been paid.

87. Other similarly situated employees of TLC have been victimized by TLC's patterns, practices, and policies, which are in willful violation of the FLSA.

88. The FLSA Collective is defined in Paragraph 66.

89. TLC's failure to pay for all hours worked and overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of TLC, and does not depend on the personal circumstances of the Plaintiffs or the FLSA Collective Members.

90. Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

91.     The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

92.     All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked and the proper amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.

93.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

94.     Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and TLC will retain the proceeds of its systematic violations.

95.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

96.     Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 66 and notice should be promptly sent to putative class members.

## COUNT TWO
### (Class Action Alleging Violations of Iowa Common Law)

A.      **VIOLATIONS OF IOWA COMMON LAW**

97.     Paragraphs 1–96 are fully incorporated herein.

98.     Plaintiff Enger further brings this action pursuant to the Iowa common law equitable theory of unjust enrichment. *See Epstein v. Des Moines Register & Tribune Co.,* No. 4:15-CV-00453-JAJ, 2016 WL 11498184, at *4 (S.D. Iowa Feb. 3, 2016) (recognizing that plaintiffs may rely on Iowa common law for unpaid straight time damages).

99.     The Iowa Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY THOMAS L. CARDELLA & ASSOCIATES, INC., ANYWHERE IN THE STATE OF IOWA, AT ANY TIME FROM AUGUST 12, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Iowa Class Members").**

100. Plaintiff Enger and the Iowa Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of TLC.

101. These claims are independent of their claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA.

102. Plaintiff Enger and the Iowa Class Members conferred a valuable benefit on TLC because they provided services to TLC before and after their shifts—during their respective computer start-up times and after their shifts ended—without compensation.

103. Plaintiff Enger and the Iowa Class Members conferred this benefit to TLC at their own expense, that is they worked for several hours to the benefit of TLC without pay.

104. TLC was aware that Plaintiff Enger and the Iowa Class Members worked through their respective computer start-up times and after their shifts ended without compensation and further, caused them to continue to work through their respective computer start-up times and after their shifts ended while off the clock and without pay.

105. Further it would be unjust to allow TLC to retain the benefit conferred by Plaintiff Enger and the Iowa Class Members under these circumstances.

106. TLC has therefore benefited from services rendered by Plaintiff Enger and the Iowa Class Members and it is inequitable for TLC to retain the benefit of Plaintiff Enger and the Iowa Class Members' services without paying fair value for them.

**B.    CLASS ACTION ALLEGATIONS**

107. Plaintiff Enger and the Iowa Class Members bring their Iowa Claim as a class action pursuant to Rule 23 on behalf of all similarly situated individuals employed by TLC who worked in Iowa at any time from August 12, 2018 through the present. *See* IOWA CODE ANN. §614.1(8).

108.    Class action treatment of Plaintiff Enger and the Iowa Class Members is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

109.    The number of Iowa Class Members is so numerous that joinder of all class members is impracticable.

110.    Plaintiff Enger is a member of the Iowa Class and her claims are typical of the claims of other class members, and she has no interests that are antagonistic to or in conflict with the interests of the other class members.

111.    Plaintiff Enger and her counsel will fairly and adequately represent the class members and their interests.

112.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

113.    Accordingly, the Iowa Class should be certified as defined in Paragraph 99.

## COUNT THREE
### (Class Action Alleging Violations of Texas Common Law)

A.    **VIOLATIONS OF TEXAS COMMON LAW**

114.    Paragraphs 1-113 are are fully incorporated herein.

115.    Plaintiff Infante further brings this action pursuant to the equitable theory of quantum meruit. *See Artemis Seafood, Inc. v. Butcher's Choice, Inc.*, No. CIV. A. 3:98-0282, 1999 WL 608853, at *3 (N.D. Tex. Aug. 11, 1999) (citing *Schuchart & Assocs. v. Solo Serve Corp.*, 1983 WL 1147, at *23 (W.D. Tex. June 29, 1983)).

116.    The Texas Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY THOMAS L. CARDELLA & ASSOCIATES, INC., IN THE STATE OF TEXAS, AT ANY TIME FROM AUGUST 12, 2016 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Texas Class Members").**

117.     The Texas Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of TLC.

118.     These claims are independent of Plaintiff Infante's claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA. *See Carman v. Meritage Homes Corp.*, 37 F. Supp. 3d 860, 867 (S.D. Tex. 2014).

119.     The Texas Class Members provided valuable services for TLC, at TLC's direction and with TLC's acquiescence.

120.     TLC accepted the Texas Class Members' services and benefited from their timely dedication to TLC's policies and adherence to Marriott's schedule.

121.     TLC was aware that Plaintiff Infante and the Texas Class Members expected to be compensated for the services they provided TLC.

122.     TLC has therefore benefited from services rendered by Plaintiff Infante and the Texas Class Members are entitled to recover pursuant to the equitable theory of quantum meruit.

**B.     TEXAS COMMON-LAW CLASS ALLEGATIONS**

123.     Plaintiff Infante brings her Texas Common-Law Claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by TLC to work in Texas since August 12, 2016. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004.

124.     Class action treatment of the Texas Class Members is appropriate because, as alleged below, all of the Federal Rule of Civil Procedure 23's class action requisites are satisfied.

125.     The number of Texas Class Members is so numerous that joinder of all class members is impracticable.

126. Plaintiff Infante is a member of the Texas Common-Law Class, her claims are typical of the claims of the other Texas Class Members, and she has no interests that are antagonistic to or in conflict with the interests of the other Texas Class Members.

127. Plaintiff Infante and her counsel will fairly and adequately represent the Texas Class Members and their interests.

128. Class certification is appropriate under the Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

129. Accordingly, the Texas Common Law Class should be certified as defined in Paragraph 116.

## COUNT FOUR
### (Class Action Alleging Violations of the NMMWA)

A. **NMMWA COVERAGE**

130. Paragraphs 1-129 are fully incorporated herein.

131. The New Mexico Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY THOMAS L. CARDELLA & ASSOCIATES, INC., ANYWHERE IN THE STATE OF NEW MEXICO, AT ANY TIME FROM AUGUST 12, 2017 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("New Mexico Class" or "New Mexico Class Members").**

132. At all times hereinafter mentioned, Defendants have been employers within the meaning of the NMMWA.

B. **FAILURE TO PAY WAGES IN ACCORDANCE WITH THE NMMWA**

133. All previous paragraphs are incorporated as though fully set forth herein.

134.     The NMMWA requires that employees receive "time and one-half" overtime premium compensation for hours worked over forty (40) per week.

135.     Plaintiff Lopez and other New Mexico Class Members have not been exempt from receiving overtime benefits under the NMMWA.

136.     Plaintiff Lopez and other New Mexico Class Members worked more than forty (40) hours in workweeks during times relevant to this complaint, however, Defendants violated the NMMWA by failing to pay Plaintiff Lopez and other class members any overtime premium for hours worked over forty (40) per week.

137.     Plaintiff Lopez and the New Mexico Class Members have suffered damages and continue to suffer damages as a result of Defendants' acts or omissions as described herein; though Defendants are in possession and control of necessary documents and information from which Plaintiff Lopez and the NMMWA Class Members would be able to precisely calculate damages.

138.     In violating the NMMWA, Defendants acted willfully, without a good faith basis and with reckless disregard of clearly applicable New Mexico law.

139.     The proposed class of employees, i.e. putative class members sought to be certified pursuant to the NMMWA, is defined in Paragraph 131.

140.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

C.     **NMMWA CLASS ALLEGATIONS**

141.     Plaintiff Lopez brings his NMMWA claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Defendants to work in New Mexico since August 12, 2017.

142.     Class action treatment of Plaintiff Lopez's NMMWA claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

143.     The number of New Mexico Class Members is so numerous that joinder of all class members is impracticable.

144.     Plaintiff Lopez is a member of the New Mexico Class, his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of other class members.

145.     Plaintiff Lopez and his counsel will fairly and adequately represent the class members and their interests.

146.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

147.     Accordingly, the New Mexico Class should be certified as in Paragraph 131.

## VI.
## RELIEF SOUGHT

148.     Plaintiff respectfully prays for judgment against TLC as follows:

a.      For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 66 and requiring TLC to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

b.      For an Order approving the form and content of a notice to be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.      For an Order pursuant to Section 16(b) of the FLSA finding TLC liable for unpaid back wages due to Plaintiffs (and those FLSA Collective Members who have joined in the suit),

for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

        d.      For an Order certifying the Iowa Common-Law Class as defined in Paragraph 99, and designating Plaintiff Enger as Class Representative of the Iowa Common-Law Class;

        e.      For an Order pursuant to Iowa Common Law awarding Plaintiff Enger and the Iowa Class Members unpaid straight time wages and other damages allowed by law;

        f.      For an Order certifying the Texas Common-Law Class as defined in Paragraph 116, and designating Plaintiff Infante as Class Representative of the Texas Common-Law Class;

        g.      For an Order pursuant to Texas Common Law awarding Plaintiff Infante and the Texas Class Members unpaid straight time wages and other damages allowed by law;

        h.      For an Order certifying the New Mexico Class as defined in Paragraph 131, and designating Plaintiff Lopez as Class Representative of the NMMWA Class;

        i.      For an Order pursuant to New Mexico Law awarding Plaintiff Lopez and the New Mexico Class Members unpaid overtime wages and other damages allowed by law

        j.      For an Order awarding the costs and expenses of this action;

        k.      For an Order awarding attorneys' fees;

        l.      For an Order awarding post-judgment and moratory interest at the highest rates allowed by law;

        m.      For an Order awarding Plaintiffs service awards as permitted by law;

        n.      For an Order compelling the accounting of the books and records of TLC, at TLC's own expense;

        o.      For an Order providing for injunctive relief prohibiting TLC from engaging in future violations of the FLSA, Iowa, Texas and New Mexico state law, and requiring TLC to comply with such laws going forward; and

p.     For an Order granting such other and further relief as may be necessary and

appropriate.


Date:   September 23, 2020          Respectfully submitted,

                                    By: /s/ Mark D. Sherinian
                                    **Mark D. Sherinian**                    AT0007173
                                    E-mail: sherinianlaw@msn.com
                                    **Melissa C. Hasso**                     AT0009833
                                    Email: mhasso@sherinianlaw.com
                                    **Emily E. Wilson**                      AT0013860
                                    Email: ewilson@sherinianlaw.com
                                    SHERINIAN & HASSO LAW FIRM
                                    111 E. Grand Ave., Suite 212
                                    Des Moines, IA  50309
                                    Telephone (515) 224-2079
                                    Facsimile (515) 224-2321

                                    **Clif Alexander** *(Admitted Pro Hac Vice)*
                                    Texas Bar No. 24064805
                                    clif@a2xlaw.com
                                    **Austin Anderson** *(Admitted Pro Hac Vice)*
                                    Texas Bar No. 24045189
                                    austin@a2xlaw.com
                                    **ANDERSON ALEXANDER, PLLC**
                                    819 N. Upper Broadway
                                    Corpus Christi, Texas 78401
                                    Telephone: (361) 452-1279
                                    Facsimile: (361) 452-1284

                                    *Attorneys in Charge for Plaintiffs and Putative Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Iowa, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Melissa C. Hasso*
Melissa C. Hasso